**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Gil Melili, Esq. (SBN: 337116)
gil@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Jessica Stock

# UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA L. STOCK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY; WELLS FARGO BANK, N.A.; and EARLY WARNING SERVICES, LLC D/B/A ZELLEPAY.COM,<br><br>Defendants. | **Case No.:** 8:22-cv-00763<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>1) **ELECTRONIC FUND TRANSFER ACT ("EFTA"), 15 U.S.C §§ 1693, *ET SEQ.*;**<br>2) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;**<br>3) **NEGLIGENCE.**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT   0

The plaintiff Jessica L. Stock ("Ms. Stock" or "Plaintiff") brings this complaint, by and through her attorneys and on behalf of all others similarly situated, against Defendants Wells Fargo & Company ("WFC"); Wells Fargo Bank, N.A. ("Wells Fargo Bank"); and Early Warning Services, LLC d/b/a Zellepay.com ("Zelle") (together the "Defendants") and alleges upon information and belief as follows:

## INTRODUCTION

1. Plaintiff is a victim of a scam targeting individual customers of Wells Fargo Bank in connection with the Zelle mobile application, resulting in $1,000 being debited from Plaintiff's checking account without Plaintiff's authorization.

2. Such Zelle scam is well-known to Defendants. Indeed, Wells Fargo Bank partially owns Zelle. However, Defendants have not taken appropriate steps to protect consumers from such scams which often results in losses of thousands of dollars to individual consumers and customers of Wells Fargo Bank.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, the Complaint alleges violations of each statute cited in its entirety.

5. Unless otherwise indicated, the use of Defendants' names in this Complaint include all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants, respectively.

6. In enacting the Electronic Fund Transfer Act ("EFTA"), Congress found that the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers. 15 U.S.C. § 1693(a). However, due to the unique characteristics of such systems, the application of existing consumer protection legislation was unclear during the time of its enactment, which left the rights and

liabilities of consumers, financial institutions, and intermediaries in electronic fund transfers undefined. *Id.*

7. That said, Congress's purpose in enacting the EFTA was to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." *Id.* § 1693(b). However, "[t]he primary objective of [the EFTA] is the provision of individual consumer rights." *Id.*

## JURISDICTION AND VENUE

8. Original subject matter jurisdiction is valid in the U.S. District Court pursuant to 28 U.S.C. § 1331 because this case arises out of violations of federal law under the EFTA, 15 U.S.C. §§ 1693, *et seq.* Jurisdiction of this Court arises pursuant to 28 U.S.C. §§ 1331 and 1367 for supplemental jurisdiction over the California state law claims arising from the same or substantially similar transactions that form the basis of the EFTA claim.

9. Moreover, the Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (i) there is minimal diversity; (ii) Defendants are not government entities against whom the District Court may be foreclosed from ordering relief; (iii) there are more than one hundred (100) people in the putative class; and (iv) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b) because: (1) Defendants transact business within this judicial district and because Plaintiff was a resident of Orange County, California at all times relevant to these claims such that a substantial part of the events giving rise to Plaintiff's causes of action against Defendants while Plaintiff resided in this judicial district; and (2) Defendants' contacts with this District are sufficient to subject them to personal jurisdiction within this judicial district.

# PARTIES

11. Plaintiff is, and at all times mentioned herein a natural person, individual citizen and resident of California, County of Orange, in this judicial district.

12. Upon information and belief, WFC is a diversified financial services company headquartered in San Francisco, California that provides banking, insurance, investments, mortgage banking, and consumer finance through banking stores, the internet, and other distribution channels to customers, businesses, and other institutions in all 50 states and in other countries.

13. Upon information and belief, WFC exercises specific and financial control over the operations of Defendant Wells Fargo Bank, dictates the policies, procedures, and practices of Wells Fargo Bank, exercises power and control over the specific activities upon which the claims herein are based, and is the ultimate recipient of the unreimbursed transactions described herein.

14. Plaintiff is informed and believes, and thereon alleges, that Wells Fargo Bank is, and at all times mentioned herein was, a national bank association chartered under the laws of the United States with its primary place of business in Sioux Falls, South Dakota. Wells Fargo Bank provides WFC personal and commercial banking services and is WFC's principal subsidiary.

15. Plaintiff is informed and believes, and thereon alleges, that Zelle is a limited liability company established under the laws of Delaware with its principal place of business in the State of Arizona.

16. Upon information and belief, Zelle is an instant payment services business owned by seven large banks in the United States, which includes WFC.

17. Plaintiff is informed and believes, and thereon alleges, that Zelle makes money by facilitating payments with participating banks.

//
//
//

## BACKGROUND ON ZELLE SCAMS

18. Created in 2017 by America's largest banks[1] to enable digital money transfers, Zelle comes embedded in banking apps and is now America's most widely used money transfer service, outpacing its closest rival (Venmo) by $260 billion in transfers in 2021.[2]

19. Though the immediacy of Zelle's service has made it a favorite primarily among consumers, it has made it a favorite among fraudsters as well.[3] Once scammers can scare or trick their victims into sending money via Zelle, "they can siphon away thousands of dollars in seconds."[4]

20. Banks, including Wells Fargo, are aware of the widespread fraud on Zelle but are doing virtually nothing to stop it and doing little to nothing to help consumers get their money back.[5]

21. In one instance involving a consumer who called Wells Fargo's customer service line to report losing $500.00 because of a Zelle scam, the customer service representative indicated that "'[a] lot of people are getting scammed on Zelle this way'" and that "[g]etting ripped off for $500 was 'actually really good,' . . . because 'many people were getting hit for thousands of dollars.'"[6]

22. Despite Defendants being keenly aware of these scams, banks like Wells Fargo, and Zelle itseld, have not done nearly enough to educate consumers about the risks of using Zelle,[7] a payment service in which Defendants' have a financial interest.

---

[1] Bank of America, Capital One, JPMorgan Chase, PNC, Trust, U.S. Bank and Wells Fargo.
[2] https://www.nytimes.com/2022/03/06/business/payments-fraud-zelle-banks.html (last visited March 30, 2022).
[3] *Ibid.*
[4] *Ibid.*
[5] *Ibid.*
[6] *Ibid.*
[7] *Ibid.*

## PLAINTIFF'S FACTUAL ALLEGATIONS

23. On or about December 28, 2021, Plaintiff received a call on her cellular telephone from a phone number with a Caller ID from Wells Fargo.

24. When Plaintiff answered the phone, a man purporting to be one of Wells Fargo's customer service representatives indicated that he was calling Plaintiff to review suspicious transactions on Plaintiff's account.

25. Since all the transactions that the purported representative reviewed with Plaintiff were made in retail locations located in Florida, they were unrecognizable to Plaintiff.

26. As such, Plaintiff told the purported representative that she did not recognize any of those transactions.

27. In response, the purported Wells Fargo representative instructed Plaintiff to login to her online account so that he could assist Plaintiff with the suspicious transactions.

28. After Plaintiff logged into her Wells Fargo account, she discovered that none of the charges mentioned by the purported representative were appearing on her account.

29. After Plaintiff had indicated that the suspicious transactions were not appearing on her account, the purported representative told Plaintiff that he had already removed those transactions from her account.

30. The purported representative informed Plaintiff that someone had used the Zelle function in the Wells Fargo smartphone application to conduct the suspicious transactions on Plaintiff's account. At that point, the purported representative instructed Plaintiff to set up the Zelle function on Plaintiff's Wells Fargo smartphone application to intercept any funds that were susceptible of being lost as a result of the suspicious transactions on Plaintiff's account.

31. After Plaintiff raised some concerns, the purported representative reassured Plaintiff that the only way for her to retrieve her funds instantly was to set up the

1  Zelle function and follow the purported representative's instructions.

2  32.  After receiving the purported representative's reassurance, Plaintiff set up the Zelle function on her Wells Fargo smartphone application. As part of the process in setting up this function, Plaintiff was required to send the purported Wells Fargo representative a code.

33.  Once Plaintiff sent the purported representative the above-mentioned code, Plaintiff was informed that she would see any missing funds back in her account within a few hours.

34.  The actual Wells Fargo Bank sent to Plaintiff's cellular telephone via text message, a "Verification code" that Plaintiff was directed to use to sign into her Wells Fargo account to verify her mobile number within 24 hours, which text message did not provide any caution to Plaintiff not to share the code with others.

35.  Plaintiff's transaction with the purported Wells Fargo representative resulted in $1,000.00[8] being taken from Plaintiff's checking account with Wells Fargo.

36.  Plaintiff informed the purported representative that she was going to change her Wells Fargo online banking account password as soon as she ended the call. In response to this assertion, the purported representative told Plaintiff that he would call back within a few days to assist Plaintiff in changing her password.

37.  At this point, Plaintiff immediately hung up the phone and proceeded to change her Wells Fargo online banking password because she realized that she had just been scammed and that the purported Wells Fargo representative was in fact a scammer.

38.  Immediately after realizing that Plaintiff had been scammed that same day, Plaintiff disputed the Zelle transaction with Wells Fargo whereby the $1,000.00 was withdrawn as a result of the scam.

---

[8] Initially, an attempt was made to transfer $2,000 through the Zelle mobile application, but only $1,000 was ultimately transferred because there were insufficient funds to transfer $2,000.

39. In disputing the transaction, an actual Wells Fargo representative informed Plaintiff that she had been scammed and that several other customers had called Wells Fargo that day about a similar scam. When Plaintiff asked about the likelihood of the transaction being reversed due to the scam, the Wells Fargo representative told Plaintiff that the likelihood was "high."

40. A few days after her first phone call with the purported Wells Fargo representative, Plaintiff received yet another call from the same purported Wells Fargo representative with the same Caller ID, who indicated that he was calling from Wells Fargo. This time, the purported representative indicating that he was calling Plaintiff in order to assist her in setting up a new password for her Wells Fargo online banking account.

41. Fearful of being scammed once again, and not knowing for certain whether the caller was from Wells Fargo Bank, Plaintiff hung up the telephone call.

42. On December 31, 2021, Wells Fargo Bank issued a provisional credit on Plaintiff's account for the disputed amount.

43. In a letter dated February 10, 2022 that was sent to Plaintiff at Plaintiff's residential address in Orange County, California, from Wells Fargo's Online Fraud Claims department, indicated that the bank had completed its investigation into Plaintiff's dispute and concluded that it would reverse the provisional credit within ten (10) days because the disputed transaction was "made by [Plaintiff] or someone who had [Plaintiff's] permission to perform transactions on [her] account."

44. On February 24, 2022, Wells Fargo Bank reversed the provisional credit, despite having been aware of the Zelle scam months prior to the unauthorized transaction affecting Plaintiff.

45. Upon information and belief, all Defendants were well-aware of the Zelle scam prior to December 28, 2021, yet took virtually no steps to protect consumers, due in part to Defendants' own financial interests.

46. As of the date this Complaint was filed, Plaintiff's checking account ending

still has a deficit of the $1,000.00.

47. Plaintiff generally maintains only a small amount of money in the checking account with Wells Fargo.

48. Upon information and belief, Plaintiff's cellular telephone number and use of Wells Fargo Bank and WFC banking services are nonpublic personal information.

## CLASS ALLEGATIONS

49. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

50. Plaintiff in a member of and seeks to represent a nationwide Class, pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), defined as:

> All persons within the United States whose bank account with Wells Fargo was debited via one or more transactions using the Zelle mobile application that was not permanently credited by Defendant/s in full within 45 days of a dispute by the customer and/or the consumer's authorized representative concerning the transaction(s).

51. Additionally, Plaintiff is a member of and seeks to represent a California Sub-Class, pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), defined as:

> All persons residing in California whose bank account with Wells Fargo was debited via one or more transactions using the Zelle mobile application that was not permanently credited by Defendant/s in full within 45 days of a dispute by the customer and/or the consumer's authorized representative concerning the transaction(s).

52. Excluded from the Class and Sub-Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of

Defendant. Further excluded from the Class and Sub-Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

53. Plaintiff reserves the right to modify the proposed class definitions, including but not limited to expanding the class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

54. <u>Numerosity</u>: The members of the Class and Sub-Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class and Sub-Class consists of thousands of individuals nationwide.

55. <u>Commonality</u>: There are questions of law and fact common to the Class and Sub-Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether Plaintiff and the Class lost money that was transferred from their account via Zelle;

    b. Whether Plaintiff and the Class are customers of Wells Fargo at the time of the unauthorized transactions;

    c. Whether Defendants Wells Fargo Bank and WFC violated the EFTA by failing to adequately investigate the disputes of Plaintiff and the Class;

    d. Whether Defendants Wells Fargo Bank and WFC violated the EFTA by failing to correct errors on the accounts of Plaintiff and the Class;

    e. Whether the transactions at issue were unauthorized EFTs, making them errors subject to the EFTA's remedial provisions;

    f. Whether Plaintiff and the Class are entitled to maximum statutory damages under the EFTA;

    g. Whether the conduct of Wells Fargo Bank and WFC was "unlawful" as that term is defined in the UCL;

  h. Whether the conduct of Wells Fargo Bank and WFC was "unfair" as that term is defined in the UCL;

  i. Whether Defendants were negligent in their actions or omissions; and

  j. Whether Plaintiff and the Class are entitled to injunctive relief.

56. <u>Typicality</u>: Plaintiff's claims are typical of those of other Class and Sub-Class Members because Plaintiff was fraudulently induced by a third party to cause a withdrawal of funds from her Wells Fargo account to occur through the Zelle mobile application, after disputing that unauthorized transaction, Plaintiff was informed by Wells Fargo Bank that the unauthorized transaction would ultimately not be reversed by the bank.

57. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of Class and Sub-Class Members. Plaintiff's Counsel are competent and experienced in litigating consumer class actions.

58. <u>Predominance</u>: Defendants have engaged in a common course of conduct toward Plaintiff, Class Members, and Sub-Class Members, in that Plaintiff's, Class and Sub-Class Members were induced into allowing a third party make unauthorized withdrawals on their Wells Fargo accounts using Zelle. The common issues arising from Defendants' conduct affecting Class and Sub-Class Members set out above predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

59. <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class and Sub-Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by

individual Class and Sub-Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class and Sub-Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

60. Defendants have acted on grounds that apply generally to the Class and Sub-Class, so that class certification is appropriate.

61. <u>Notice</u>: Plaintiff anticipates providing direct notice to the Class and Sub-Class for purposes of class certification, via U.S. Mail and/or email, based upon Defendants' and/or Defendants' agents' records.

# FIRST CAUSE OF ACTION
# VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT ("EFTA"), 15 U.S.C. §§ 1693, *ET SEQ.*
## (On Behalf of Plaintiff and the Class Against Defendants WFC and Wells Fargo Bank Only)

62. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

63. The Electronic Fund Transfer Act ("EFTA") and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

64. "If a financial institution, within sixty days after having transmitted to a consumer pursuant to [15 U.S.C. § 1693d(a), (c), or (d)] or notification pursuant to [15 U.S.C. § 1693(d)] receives oral or written notice in which the consumer[:] (1) sets forth or otherwise enables the financial institution to identify the name and the account number of the consumer; (2) indicates the consumer's belief that the documentation, or, in the case of notification pursuant to [15 U.S.C. § 1693d(b)], the

consumer's account, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred," the financial institution is required to investigate the alleged error. 15 U.S.C. § 1693f(a).

65. After said investigation, the financial institution must determine whether an error has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days. *Id.*

66. A financial institution that provisionally recredits the consumer's account for the amount alleged to be in error pending an investigation, however, is afforded forty-five (45) days after receipt of notice of error to investigate. *Id.* § 1693f(c).

67. Pursuant to the EFTA, an error includes "an unauthorized electronic fund transfer." *Id.* § 1693f(f).

68. An Electronic Fund Transfer ("EFT") is any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(b)(1). Accordingly, Regulation E applies to any person-to-person ("P2P") or mobile payment transactions that meet the definition of EFT. 12 C.R.F. 1005.3(b)(1)(v); *id.*, Comment 3(b)(1)-1ii.

69. Unauthorized EFTs are EFTs from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 12 C.F.R. 1005.2(m).

70. According to the CFPB, when a third party fraudulently induces a consumer into sharing account access information that is used to initiate an EFT from the consumer's account, that transfer meets Regulation E's definition of an unauthorized EFT.[9]

---

[9] https://www.consumerfinance.gov/compliance/compliance-resources/deposit-accounts-resources/electronic-fund-transfers/electronic-fund-transfers-faqs/ (last visited March 30, 2022).

71. In particular, Comment 1005.2(m)-3 of Regulation E explains that an unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through robbery or fraud. As such, when a consumer is fraudulently induced into sharing account access information with a third party, and a third party uses that information to make an EFT from the consumer's account, the transfer is an unauthorized EFT under Regulation E.[10]

72. Here, Plaintiff and other class members were fraudulently induced by a third-party scammer involving the Zelle mobile application into sharing Wells Fargo account access information.

73. The third party then used the information fraudulently obtained from Plaintiff and other class members to make unauthorized EFTs from the accounts of Plaintiff and other class members from their Wells Fargo accounts.

74. After the unauthorized EFTs were made, said EFTs appeared on the bank statements of Plaintiffs and other class members.

75. Plaintiff and other class members notified Wells Fargo Bank and WFC of these errors within sixty (60) days of their appearances on the accounts of Plaintiff and other class members.

76. Wells Fargo and WFC then issued provisional credits in the amounts of those credits on the accounts of Plaintiff and at least some of the Class members.

77. After receiving notice of the unauthorized ETFs on the accounts of Plaintiff and other class members, Wells Fargo Bank and/or WFC informed Plaintiff and at least some of the Class members that the provisional credits placed on said accounts would be reversed because Wells Fargo Bank and WFC erroneously concluded that the unauthorized EFTs "were made by [Plaintiff and other class members] or someone who had [their] permission to perform transactions on [their] account."

---

[10] *Ibid.*

78. As a direct and proximate result of the conduct of Wells Fargo Bank and WFC, Plaintiff and other Class Members were unable to reclaim funds that were fraudulently taken from their accounts with Wells Fargo.

79. Upon information and belief, Wells Fargo Bank and WFC knowingly and willfully concluded that the transfers of funds via Zelle on accounts of Plaintiff and other Class members were not in error when such conclusions could not reasonably have been drawn from the evidence available to the financial institutions at the time of the investigation. 15 U.S.C. § 1693f(e)(2).

80. Upon information and belief, Wells Fargo Bank and WFC intentionally determined that the unwanted transfer of funds via Zelle on accounts of Plaintiff and other Class members were not in error due to, at least in part, WFC's financial self-interest as a stakeholder in Zelle.

81. As such, Plaintiff and other class members are each entitled to (i) actual damages; (ii) treble damages; (iii) the lesser of $500,000.00 or one percent (1%) of the net worth of Wells Fargo and WFC; and (iv) reasonable attorneys' fees and costs. *Id.* §§ 1693f(e)(2), 1693m(a)(2)(B)-(3).

## SECOND CAUSE OF ACTION
## CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"),
## CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*
## (On Behalf of Plaintiff and the Sub-Class Against Wells Fargo Bank and WFC Only)

82. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

83. The UCL defines "unfair business competition" to include any "unlawful, unfair, or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

84. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

### *"Unfair" Prong*

85. A business practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practices against the gravity of the harm to the alleged victims.

86. Wells Fargo Bank and WFC's actions constitute "unfair" business practices because, as alleged above, they intentionally declined to reverse charges on the accounts of Plaintiff and Class Members even though they knew or should have known that said charges were in fact unauthorized transactions that needed to be reversed pursuant to the terms of EFTA.

87. Wells Fargo Bank and WFC's failure to adequately investigate the unauthorized transactions, including after acknowledging the Zelle scam in some instances, coupled with their financial interest in Zelle and the bank's decision to not permanently credit their customers' accounts that were affected by the scam, offends established public policy, including that embodied by the EFTA.

88. Through their practices, Wells Fargo Bank and WFC save millions of dollars which should have, in all fairness, been permanently credited to Plaintiff and the California Sub-Class following their disputes with the bank.

89. The harm to Plaintiff and Class Members grossly outweighs the utility of Defendant's practices as there is no utility to practices of Wells Fargo Bank and WFC.

### *"Unlawful" Prong*

90. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

91. Wells Fargo Bank and WFC's acts and practices alleged above constitute unlawful business acts or practices as they have violated the plain language of EFTA as described in Plaintiff's First Cause of Action above.

92. The violation of any law constitutes as "unlawful" business practice under the UCL.

93. These acts and practices alleged were intended to or did result in violations of EFTA.

94. Wells Fargo Bank and WFC have and will continue to unlawfully deny the transaction disputes of Plaintiff, the Class, and the public by claiming that said disputed transactions are "authorized," even though said transactions are actually "unauthorized," as that term is defined by EFTA and applicable regulations. Consequently, the practices of Wells Fargo Bank and WFC constitute unfair and unlawful business practices within the meaning of the UCL.

95. Pursuant to the UCL, Plaintiff and the Class are entitled to preliminary and permanent injunctive relief and order Wells Fargo Bank and WFC to cease this unfair and unlawful competition, as well as disgorgement and restitution to Plaintiff and the Class of all the revenues associated with this unfair and unlawful competition, or such portion of said revenues as the Court may find applicable.

## THIRD CAUSE OF ACTION
### NEGLIGENCE
**(On Behalf of Plaintiff, the Class and the Sub-Class Against All Defendants)**

96. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

97. Wells Fargo Bank and WFC owed Plaintiff and the Class at least a duty to take reasonable steps to safeguard customer financial information and protect their financial accounts from malicious third parties, adequately warn of known risks

and/or dangers associated with the Zelle mobile application, and properly investigate disputed transactions accomplished through the Zelle mobile application.

98. Zelle owed Plaintiff and the Class at least a duty to take reasonable steps to adequately warn of known risks and/or dangers associated with the Zelle mobile application, and to take appropriate steps in response to a known scam involving the mobile application to protect consumers from malicious third parties.

99. Defendants breached their obligations to Plaintiff and Class Members and were otherwise negligent and/or reckless by at least:

   a. Failing to maintain adequate data security measures to prevent or reduce the risk of disclosure of the names, phone numbers, and bank affiliation of Plaintiff and the Class to malicious third parties;

   b. Failing to adequately protect the private information of Plaintiff and the Class;

   c. Failing to properly warn Plaintiff and the Class of the risks and/or dangers associated with the Zelle mobile application;

   d. Failing to take appropriate steps to avoid unauthorized transactions through the Zelle mobile application in response to known scams and continuing with business as normal;

   e. Failing to adequately investigate the unauthorized transactions made on the accounts of Plaintiff and the Class using the Zelle payment platform.

   f. Failing to implement appropriate and sufficient safeguards against scams of the nature alleged in the Complaint in light of the knowledge that those scams have been rampant across the country;

   g. Failing to reverse unauthorized transactions following disputes of Plaintiff and the Class despite Defendants' knowledge that said transactions were unauthorized as part of a scam that is well-known to Defendants; and

   h. Failing to permanently reverse unauthorized transactions upon a sufficient showing by Plaintiff and the Class that said transactions were unauthorized.

100. As a direct and proximate result of Defendants' breach, Plaintiff and Class Members lost funds from their Wells Fargo accounts.

101. Accordingly, Plaintiff and Class members have lost millions of dollars and further face a continuing and increased risk of fraud and loss of money.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against Defendants, and each of them, as follows:

- Class certification of this action;
- Appointment of Plaintiff as Class Representative;
- Appointment of Plaintiff's attorneys as Class Counsel;
- An award of actual damages, in an amount to be determined at trial;
- An award of treble damages against Wells Fargo Bank and WFC pursuant to the EFTA;
- An award of the lesser of $500,000.00 or one percent (1%) of the net worth of Wells Fargo Bank and WFC;
- Injunctive and other equitable relief against Defendants as necessary to protect the interests of Plaintiff and other Class Members, and an order prohibiting Defendants from engaging in unlawful and/or unfair acts described above, including public injunctive relief;
- An order of restitution from Defendants;
- An order declaring Defendants' conduct as unlawful;
- Costs of Suit;
- Pre- and post-judgment interest;
- An award of reasonable attorneys' fees; and
- Any other relief the Court may deem just and proper, including interest.

# DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: April 5, 2022                         Respectfully submitted,

                                                    **KAZEROUNI LAW GROUP, APC**

                                                    By: /s/ Abbas Kazerounian
                                                            Abbas Kazerounian, Esq.
                                                            ATTORNEY FOR PLAINTIFF