MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
REBECCA S. SAELAO (State Bar No. 222731)
rss@severson.com
SEVERSON & WERSON
A Professional Corporation
595 Market Street, Suite 2600
San Francisco, California 94105
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

Attorneys for Defendants
WELLS FARGO & COMPANY and
WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA L. STOCK, SOFIA SIORIS, LUKE HARTSOCK, JERRY WINIARSKI, and TRACY VINCENT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY; WELLS FARGO BANK, N.A.; and EARLY WARNING SERVICES, LLC D/B/A ZELLEPAY.COM,<br><br>Defendants. | Case No. 8:22-cv-00763-DOC-ADS<br>Assigned to: Hon. David O. Carter<br><br>**WELLS FARGO DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTIONS TO COMPEL ARBITRATION**<br><br>**[Dkt. Nos. 54-58]**<br><br>Date:  December 5, 2022<br>Time:  8:30 a.m.<br>Crtrm.: Courtroom 10 A |

07685.2773/16328828.5

# I. INTRODUCTION

For purposes of this sur-reply the sole issue before this Court is whether Plaintiffs' claims are more like those at issue in two post-*Hodges*[1] cases raised by Plaintiffs' counsel at the December 5, 2022 hearing on Wells Fargo's[2] motions to compel arbitration of Plaintiffs' claims,[3] or whether—as Wells Fargo contends—Plaintiffs' claims are in fact more like those at issue in *Hodges* itself. In other words, do Plaintiffs seek to resolve a private dispute with relief that would primarily benefit a discrete group of customers rather than the public, such that the principles set forth in *McGill* are inapplicable, as was the case in *Hodges*? *See* 21 F.4th at 549. Or is the crux of Plaintiffs' claims and the relief sought an injunction that has the primary purpose of preventing future potential injury to the public at large, as the courts held was the case in *Bow* and *In re Stubhub*?

A review of Plaintiffs' allegations reveals that, unlike the plaintiffs in *Bow* and *In re Stubhub*, who clearly sought injunctive relief to protect the general public from future harm, Plaintiffs here seek relief that will primarily benefit themselves and a subset of Wells Fargo customers whom Plaintiffs claim are entitled to reimbursement under the "error resolution" provision of the Electronic Fund Transfer Act ("EFTA") and Regulation E for alleged unauthorized Zelle transactions. Because Plaintiffs do not seek public injunctive relief, this Court need not—and should not—reach Plaintiff's *McGill* arguments, under binding Ninth Circuit precedent.

---

[1] *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021).

[2] "Wells Fargo" refers collectively to Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. "Plaintiffs" refers collectively the five named Plaintiffs.

[3] *See Bow v. Cebridge Telecom CA, LLC*, No. 2:21-cv-444-TLN-JDP, 2022 U.S. Dist. LEXIS 19391, at *1 (E.D. Cal. Feb. 1, 2022) ("*Bow*") and *In re Stubhub Refund Litig.*, No. 20-md-2951-HSG, 2021 U.S. Dist. LEXIS 225104, at *32 (N.D. Cal. Nov. 22, 2021) ("*In re Stubhub*").

## II. ARGUMENT

In *Bow* and *In re Stubhub* the primary relief sought was injunctive relief designed to protect the public from future harm. *See Bow*, 2022 U.S. Dist. LEXIS 19391, at *6-8; *In re Stubhub*, 2021 U.S. Dist. LEXIS 225104, at *31-32.

The *Bow* plaintiffs sued the defendant-internet service provider seeking a detailed order requiring the defendant to make disclosures to both "current subscribers, and the consuming public" about its internet speeds and infrastructure capabilities, as well as requiring defendant to make specific improvements to its infrastructure. *Bow*, 2022 U.S. Dist. LEXIS 19391, at *6-8.

In analyzing the requested relief, the *Bow* court noted that "[p]ublic injunctive relief, under California law, is 'relief that by and large benefits the general public and that benefits the plaintiff, if at all, only incidentally and/or as a member of the general public.' " *Bow*, 2022 U.S. Dist. LEXIS 19391, at *4-5. Private injunctions, on the other hand, primarily rectify individual wrongs—though they may *incidentally* benefit the general public. *Id.* at *6. The key difference is "the primary beneficiary of the relief." *Id.* The court ultimately determined the *Bow*-plaintiffs were primarily seeking relief that was aimed at benefiting the general public (*i.e.*, public injunctive relief). *Id.* at *10.

Similarly, in *In re Stubhub*, a putative class filed suit against Stubhub over changes to its refund policy. As a result of the COVID-19 pandemic, the company changed its policy of providing full refunds to a policy of providing either a credit or a refund. *In re Stubhub*, 2021 U.S. Dist. LEXIS 225104, at *4. Despite the policy change, plaintiffs claimed Stubhub continued to advertise its full refund guarantee. *Id.* at *5. Plaintiffs sought an injunction requiring StubHub to honor its longstanding refund policy and to disseminate corrective advertising to the public about changes to it refund guarantee. *Id.* at *31-32.

Stubhub moved to compel arbitration of the claims pursuant to its user agreement. *Id.* *5-6. In response, plaintiffs argued that the arbitration provision

was unenforceable under California law because it sought to waive plaintiffs' right to seek public injunctive relief.  *Id.* *29-36.

The court cited *McGill* and *Hodges* for the proposition that:

> [P]ublic injunctive relief…is limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so **without the need to consider the individual claims of any non-party**.

*In re Stubhub*, 2021 U.S. Dist. LEXIS 225104, at *31 (emphasis added).

The *Stubhub* court found the "requested injunctive relief [wa]s designed to prevent future harm to members of the public and not just the specific named Plaintiffs or class members." *Id.* at *34.

Here, unlike *Bow* or *In Re Stubhub*, Plaintiffs do not clearly seek injunctive relief that is designed to protect the public from future harm.  The lone prayer for public injunctive relief is an afterthought.  It is eclipsed by the relief Plaintiffs seek for the exclusive benefit of themselves and putative class members for past alleged wrongs—that is, the failure to recredit Plaintiffs' bank accounts for alleged unauthorized Zelle transfers.  For example, Plaintiffs seeks monetary compensation in the form of refunds (*see* FAC ¶¶ 204, 214, 219), disgorgement and restitution (*see* FAC ¶¶ 200, 214, 240, 252), and "statutory damages, costs and fees under EFTA" (FAC ¶ 150).

Moreover, unlike *Bow* and *In Re Stubhub*, the relief Plaintiffs seek requires assessment of individualized claims—a hallmark that the requested relief is private, not public.  *Hodges*, 21 F.4th at 548; *In re Stubhub*, 2021 U.S. Dist. LEXIS 225104, at *31.  Whether any Plaintiff or putative class member is entitled to relief will depend on answers to questions like: was the transaction authorized or, did the individual receive a benefit from the transaction?  Did the individual timely notify the Bank of the alleged unauthorized transaction pursuant to 15 USC § 1693f(a)?

Did the Bank conduct a reasonable investigation based on the information available to it at the time pursuant to 15 USC § 1693f(a)?

Not only are the remedies sought in this case markedly distinguishable from those in *Bow* and *In re Stubhub*, but the persons potentially affected by those remedies are also different. The plaintiffs in *Bow* and *In re Stubhub* brought claims intended benefit the general public—not just internet service subscribers or consumers who bought tickets using the Stubhub application. But here, Plaintiffs are a subset of Wells Fargo customers who claim they are "victims of sophisticated [Zelle] scams." *See* FAC ¶ 44. As alleged in the FAC, "Zelle is a money payment platform" that is "integrated into the websites and mobile app of Wells Fargo Bank" and allows funds to be debited directly from the customer's Wells Fargo bank account. *See* FAC ¶¶ 22, 26, 28, 30, 38.

Each one of the Plaintiffs claim money was debited from their Wells Fargo account(s) via Zelle—though how this transpired varies—and they seek to represent other Wells Fargo customers whose bank account(s) were debited using Zelle, and whose account(s) were not permanently recredited within 45 days following a customer-initiated dispute concerning unspecified transactions. *See* FAC ¶ 141. Stated another way, the putative class—and the persons Plaintiffs seek to benefit by way of this litigation—consists of a *subset of Wells Fargo customers*: (1) who signed up for Wells Fargo online and mobile banking; (2) who had funds debited from their account via the Zelle platform integrated in those applications; (3) who did not authorize those funds transfers; (4) who timely initiated disputes with Wells Fargo; and (5) who did not receive timely, permanent recredits as required by EFTA/Reg E.

And, to the extent Plaintiffs demand changes to Wells Fargo's handling of customer claims relating to Zelle transfers—including how it investigates disputed transactions and recredits funds, or not—the relief sought is uniquely tailored to certain Wells Fargo customers who utilize online/mobile banking and the integrated

Zelle platform.

Thus, unlike *Bow* and *In re Stubhub*, where the plaintiffs sought relief that would affect the *public*—by altering advertising aimed at the general public—here, Plaintiffs' requested relief would primarily benefit a " 'particular class of persons.' " *In re Stubhub*, 2021 U.S. Dist. LEXIS 225104, at *31 (citation omitted).  Because Plaintiffs are, at best, seeking a private injunction, *McGill* has no application to this case.

## III.  CONCLUSION

The Plaintiffs in *Bow* and *In re Stubhub* sought orders specifically aimed at protecting the general public from future harm—classic examples of public injunctive relief.  This case is not like *Bow* or *In re Stubhub*.  It is on all fours with controlling Ninth Circuit precedent, *Hodges*.  Plaintiffs seek to redress a private dispute on behalf of specific subset of Wells Fargo customers.  Specifically, Plaintiffs seek to recover funds from unauthorized Zelle transfers they claim Wells Fargo wrongfully refused to recredit pursuant to EFTA and Reg E.  Not only is the primary purpose of the relief Plaintiffs seek to remedy past injuries to similarly situated Wells Fargo customers, but the availability of the relief necessarily depends on each customer's individual claim.  This is inconsistent with public injunctive relief.  Therefore, because Plaintiffs' complaint will not primarily benefit the public (*i.e.*, it does not seek public injunctive relief) there is no *McGill* issue and Wells Fargo's Motions to Compel Arbitration should be granted.

DATED:  December 16, 2022         SEVERSON & WERSON

                                  By:    */s/ Elizabeth C. Farrell*
                                         ELIZABETH C. FARRELL

                                  Attorneys for Defendants
                                  WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.