JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. SA CV 22-00763-DOC-ADS                         Date:  July 13, 2023

Title: JESSICA STOCK ET AL V. WELLS FARGO ET AL.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

|  Karlen Dubon  |  Not Present  |
| :---: | :---: |
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| :---: | :---: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING MOTIONS TO COMPEL ARBITRATION [54, 55, 56, 57, 58] AND STAYING ACTION**

Before the Court are Defendants Wells Fargo & Company, Wells Fargo Bank, N.A.'s ("Wells Fargo") motions to compel arbitration as to Plaintiffs Luke Harstock, Sofia Sioris, Tracy Vincent, Jessica L. Stock, and Jerry Winiarski (collectively, "Motions to Compel Arbitration" or "MTCs") (Dkts. 54-58), and Defendant Early Warning Services, LLC's ("Zelle") motion to dismiss the case ("Zelle Motion") (Dkt. 52). For reasons set forth below, the Court **GRANTS** Wells Fargo's Motions to Compel Arbitration and **STAYS** this action pending the completion of arbitration proceedings. The parties are **ORDERED** to submit a joint status report within 90 days regarding the status of arbitration proceedings.

## I.    Background

### A.  Facts[1]

---

[1] Unless otherwise indicated, the following facts are taken from Plaintiffs' First Amended Class Action Complaint ("FAC") (Dkt. 40).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 22-00763-DOC-ADS                    Date: July 13, 2023

                                                                      Page 2

        Plaintiffs allege they are victims of scams targeting individual Wells Fargo
customers in connection with the Zelle mobile application. The scams, according to
Plaintiffs, resulted in money being debited from their respective bank accounts without
Plaintiffs' authorization, in the amounts of $1,000 in December 2021 (Ms. Stock), $1,000
in March 2022 (Ms. Sioris), $7,500 in December 2021 (Mr. Hartsock), $1,500 in March
2022 (Mr. Winiarski), and $440 in May 2022 (Ms. Vincent). FAC ¶ 1. Plaintiffs allege
the following causes of action against Defendants:

1) Violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C §§ 1693, *et
   seq.*;
2) Violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof.
   Code §§ 17200, *et seq.*;
3) Violations of the Washington Consumer Protection Act, RCW § 49.30 *et seq*;
4) Violations of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521;
5) Violations of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. §§
   501.201;
6) Negligence; and
7) Unjust enrichment.

*See generally* FAC.

## B. Procedural History

        On April 5, 2022, Plaintiff Jessica L. Stock filed this suit against Defendants Wells
Fargo & Company, Wells Fargo Bank, N.A. ("Wells Fargo") and Early Warning
Services, LLC d/b/a Zellepay.com ("Zelle") (collectively, "Defendants"). On July 22,
2022, Plaintiffs Jessica L. Stock, Luke Hartsock, Sofia Sioris, Jerry Winiarski, and Tracy
Vincent filed a First Amended Complaint ("FAC") (Dkt. 40).

        On September 20, 2022, Defendant Zelle filed a motion to dismiss Plaintiffs'
FAC. ("Zelle Mot.") (Dkt. 52) and Defendant Wells Fargo filed motions to compel
arbitration as to Plaintiffs Luke Harstock ("Hartsock MTC") (Dkt. 54), Sofia Sioris
("Sioris MTC") (Dkt. 55), Tracy Vincent ("Vincent MTC") (Dkt. 56), Jessica L. Stock
("Stock MTC") (Dkt. 57), and Jerry Winiarski ("Winiarski MTC") (Dkt. 58)
(collectively, "Motions to Compel Arbitration" or "MTCs"). On October 10, 2022,
Defendant Zelle joined Wells Fargo's MTCs (Dkt. 60).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-00763-DOC-ADS                           Date: July 13, 2023

                                                                    Page 3

On November 4, 2022, Plaintiffs Luke Hartsock, Sofia Sioris, Jessica L. Stock, Tracy Vincent, and Jerry Winiarski ("Plaintiffs") each opposed the MTCs (Dkts. 61–66). Defendants filed their reply in support of the MTCs on November 18, 2022. (Dkts. 69–73). On January 20, 2023, Defendants filed a Notice of Supplemental Authority in support of their MTC (Dkt. 87), notifying the Court of a decision issued in the District Court for the District of New Jersey, *Wilkins v. Navy Federal Credit Union*, No. 2:22-CV-02916-SDW-ESK (D.N.J. Jan. 18, 2023). On March 27, 2023, Plaintiffs filed a Notice of Supplemental Authority (Dkt. 88) in support of their Opposition, notifying the Court of an opinion issued in in the District Court for the Southern District of New York, *Davitashvili, et al. v. Grubhub Inc., et al.*, No. 2023 WL 2537777 (S.D.N.Y. March 16, 2023).[2]

## II.    Legal Standard

"[A]n agreement to arbitrate is a matter of contract." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[I]t is a way to resolve those disputes—but only those disputes—the parties have agreed to submit to arbitration." *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). The party seeking to compel arbitration "bears 'the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Norcia v. Samsung Telecoms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

The Federal Arbitration Act ("FAA" or "Act") provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA "permits any party 'aggrieved by the alleged . . . refusal of another to arbitrate'

---

[2] In *Davitashvili v. Grubhub, Inc.*, the District Court for the Southern District of New York denied a motion to compel arbitration in part because the defendant there had not provided evidence that customers had been put on notice of its terms and conditions. *See generally Davitashvili*, No. 20-CV-3000 (LAK), 2023 WL 2537777 (S.D.N.Y. Mar. 16, 2023). In addition to being an out-of-circuit case and therefore not binding precedent on this Court, the facts there are distinguishable; Defendants here support their contention that Plaintiffs were on notice of the terms by submitting copies of the governing agreements and emails sent to Plaintiffs notifying them of updates to the Online Access Agreement. The other case, *Wilkins v. Navy Federal Credit Union*, No. 2:22-CV-02916-SDW-ESK (D.N.J. Jan. 18, 2023), is similarly distinguishable and addresses an issue not before this Court—namely the appropriate test for satisfying the jurisdictional amount in cases brought under the Class Action Fairness Act.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SA CV 22-00763-DOC-ADS                                    Date: July 13, 2023

Page 4

to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron*, 207 F.3d at 1130 (quoting 9 U.S.C. § 4). The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). When a party moves to compel arbitration, interpreting the parties' intent on certain issues in the agreement remains "within the province of judicial review." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). It follows that a court's role is limited to determining (1) whether a valid agreement to arbitrate exists, and if so, (2) whether the agreement encompasses the dispute at issue. *See* 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999). An arbitration clause that "clearly and unmistakably" empowers the arbitrator to decide what matters are arbitrable will be given effect. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *First Options*, 514 U.S. at 944.

"The Act has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011) (citing *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 217 (1985)). To implement this holding, courts must examine a complaint with care to assess whether any individual claim must be arbitrated. *Id.* Although the FAA "provides for a stay pending compliance with a contractual arbitration clause . . . a request for a stay is not mandatory," *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978), and a district court may "properly entertain[]" a dismissal motion, *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004).

### III.    Discussion

Wells Fargo argues that the Court should compel arbitration pursuant to its Online Access Agreement ("OAA") that, according to Wells Fargo, Plaintiffs accepted when they enrolled in online banking.[3] *See* Hartsock MTC at 9; Sioris MTC at 8–9; Vincent MTC at 8–9; Stock MTC at 8; Winiarski MTC at 9. Specifically, Wells Fargo contends that Plaintiff Sioris affirmatively accepted the terms and conditions of the 2013 OAA in effect at the time of her enrollment in online banking in April 2015, *see* Sioris MTC at 8–

---

[3] Defendants submitted copies of the applicable OAA's in support of their motions. *See* Request for Judicial Notice (Dkt. 53).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 22-00763-DOC-ADS                                 Date: July 13, 2023

                                                                                            Page 5

9; that Plaintiffs Stock and Hartsock were required to affirmatively accept the terms and conditions of the 2016 OAA to complete enrollment and log in to online/mobile banking, *see* Stock MTC at 9, Hartsock MTC at 9; and that Vincent and Winiarski affirmatively accepted the terms and conditions of the 2019 OAA in effect at the time to enroll in online and mobile banking, *see* Vincent MTC at 7; Winiarski MTC at 9. The OAAs governing Plaintiffs' claims, according to Wells Fargo, state that "by using the Service . . . you agree to the terms and conditions of this entire Agreement" which "covers, among other things":

- Your agreement with us to use binding arbitration for most disputes arising under this Agreement or about the Service[4] and to waive the right to a trial by jury.

- Your waiver of class-action rights . . . .

One section of the OAA is titled "Dispute Resolution Program: Waiver of Class Action Rights and Arbitration Provisions" and "constitutes the arbitration agreement between you and us, and includes a mutual waiver of class action rights. It governs disputes about the following, which are known as "Covered Disputes":

- Interpretation of this Agreement (which includes this arbitration agreement and whether a disagreement is a "dispute" subject to binding arbitration as provided for in this arbitration agreement).
- The Service.
- The Online Access Process.
- Online Financial Services ("Covered Disputes") . . . .

Online Financial Services are defined to include "[e]ach product or service you may access or enroll in through the Website and other related services can include the Mobile Banking Service" as well as "[a]ctions you take, and instructions you give, through the Website about opening or maintaining Eligible Accounts . . . ." Section 19 further provides that:

---

[4] The OAA defines "Service" as meaning any online or mobile services available through Wells Fargo Online, Wells Fargo Business Online, Wells Fargo Mobile or Wells Fargo Advisors online services "after entering into this Agreement."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 22-00763-DOC-ADS                                   Date: July 13, 2023

> You and we agree that any Covered Disputes between or among you and us, regardless of when it arose, will, upon demand by either you or us, be resolved by the arbitration process described in Section (d) below. You understand and agree that you and we are each waiving the right to a jury trial or a trial before a judge in a public court.
>
> * * *
>
> . . . Either you or we may require the submission of a Covered Dispute to binding arbitration at any reasonable time, even if a lawsuit or other proceeding has begun. . . Neither you nor we will be entitled to:
>
> - Join, consolidate or combine Covered Disputes by or against others in any arbitration; or
> - Include in any arbitration any Covered Dispute as a representative or member of a class; or
> - Act in any arbitration in the interest of the general public or in a private attorney-general capacity.

The applicable OAA's also makes clear that the arbitration provision applies as between Plaintiffs and "Wells Fargo Bank, N.A. and any of its affiliates. . . ."

The August 30, 2021 OAA (the "2021 OAA") governed Hartsock's use of online banking in connection with the Accounts in December 2021, when the transactions at issue occurred. Hartsock MTC at 10 (citing Morris Decl. ¶ 23). According to Wells Fargo, Hartsock was notified of the August 30, 2021, update by email, which provided a link to the updated agreement. *Id.*

Hartsock's claims stem from a disputed electronic funds (Zelle) transfer, and Wells Fargo's investigation of Hartsock's dispute. Hartsock MTC at 12 (citing FAC ¶¶ 91–116). The suit therefore relates to a "Covered Dispute" and is subject to binding arbitration. *Id.* The Court should compel arbitration because a valid agreement to arbitrate exists under South Dakota law (which applies per the terms of the OAA), *see* Morris Decl. Ex. 6 at §22(b)), and Washington law (where Hartsock resides), Hartsock MTC at 16.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 22-00763-DOC-ADS                                     Date: July 13, 2023

Page 7

The 2021 OAA also governed Stock's use of online banking in connection with her account at the time the disputed transactions occurred. On or about August 30, 2021, Wells Fargo emailed Stock to advise her that the terms and conditions of the OAA had been updated and provided a link to the updated document. *See* Stock MTC at 10–11 (citing Morris Decl., ¶ 17). The 2021 OAA also contains a Zelle Transfer Service addendum, which incorporates the OAA's arbitration provision. *Id*. According to Wells Fargo, because Stock's claims stem from a disputed electronic funds (Zelle) transfer, and Wells Fargo's investigation of Stock's dispute, *Id*. at 12 (citing FAC ¶¶ 53, 66–74), the suit relates to a "Covered Dispute" and is subject to binding arbitration. *Id.* The Court should compel arbitration because a valid agreement to arbitrate exists under South Dakota law (which applies per the terms of the OAA), and California law (where Stock resides). *Id*. at 16.

The February 15, 2022 OAA (the "2022 OAA") governed Sioris' use of online banking in connection with the Account as of March 2022. Sioris MTC at 9 (citing Morris Decl. ¶ 21). Wells Fargo notified Sioris of the February 15, 2022 update by email, and provided a link to the updated agreement. *Id.* Sioris' claims stem from a disputed transfer of electronic funds through Zelle and the subsequent investigation by Wells Fargo of Sioris' dispute. Sioris MTC at 12 (citing FAC ¶¶ 76–90). The suit therefore relates to a "Covered Dispute" and is subject to binding arbitration. *Id.* Wells Fargo argues that the Court should compel arbitration because a valid agreement to arbitrate exists both under South Dakota law (which applies per the terms of the OAA and California law (where Sioris resides). Sioris MTC at 16 (citing Morris Decl. Ex. 5 at §22(b)).

The 2022 OAA also governed Vincent's use of online banking in connection with his account as of May 2022. Vincent MTC at 9 (citing Morris Decl. ¶ 18, Ex. 5). Wells Fargo notified Vincent of the February 15, 2022 update by email, and provided a link to the updated agreement. *Id.* Vincent's claims stem from a disputed transfer of electronic funds through Zelle and the subsequent investigation by Wells Fargo of Vincent's dispute. *Id*. at 12 (citing FAC ¶¶ 132–39). The suit therefore relates to a "Covered Dispute" and is subject to binding arbitration. *Id*.

The Court should compel arbitration because a valid agreement to arbitrate exists under South Dakota law (which applies per the terms of the OAA, and Florida law (where Vincent resides). *Id.* at 12.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 22-00763-DOC-ADS

Date: July 13, 2023

Page 8

The 2022 OAA also governed Winiarski's use of online banking in connection with his account in March 2022, when the transactions at issue occurred. Winiarski MTC at 9 (citing Morris Decl., ¶¶ 7–12). Winiarski's claims stem from a disputed electronic funds (Zelle) transfer, and Wells Fargo's investigation of his dispute. *Id.* at 12 (citing FAC ¶¶ 117–31). The suit therefore relates to a "dispute" under the account agreement or "Covered Dispute" under the OAA and is therefore subject to binding arbitration. *Id.* The Court should compel arbitration because a valid agreement to arbitrate exists under South Dakota law (which applies per the terms of the OAA (see Morris Decl. Ex. 6 at §22(b)), and Arizona law (where Winiarski resides). *Id.* at 16.

Plaintiffs urge denial of the Motions because (1) Wells Fargo has failed to show mutual assent to arbitrate disputes; (2) even if there were an agreement to arbitrate, the dispute at issue for the unauthorized Zelle transactions is outside the scope of the arbitration clause; and (3) under applicable California law, the arbitration provisions prohibiting Plaintiffs from seeking public injunctive relief are unlawful as a matter of California public policy. *See generally* Opp'n.

The Court addresses each argument in turn.

**A. Valid Agreement to Arbitrate**

**i. Choice of Law**

Under the FAA, a court's role is generally limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lee v. Intelius Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If so, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. *Id.* at 1130. The first question, therefore, is whether a valid agreement to arbitrate exists.

To evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, "[b]efore a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must [first] determine which state's laws to apply." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-00763-DOC-ADS                                      Date: July 13, 2023

Page 9

Wells Fargo contends that South Dakota law should apply pursuant to a choice of law provision found in the OAA. Hartsock MTC, Morris Decl. Ex. 6 at §22(b) ("This Agreement covers . . . [y]our mutual agreement with us that South Dakota law will control this Agreement, without regard to conflict-of-law rules."). Plaintiffs respond that South Dakota has no substantial relationship to Plaintiffs or the transaction at issue, and there is no reasonable basis to select South Dakota law to govern the matter. Stock Opp'n to MTC ("Stock Opp'n") (Dkt. 61) at 6; Sioris Opp'n to MTC ("Sioris Opp'n") (Dkt. 62) at 6; Vincent Opp'n to MTC ("Vincent Opp'n") (Dkt. 65) at 7.

A federal court hearing a diversity case applies the conflict of law rules of the state in which the court sits. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir. 1987). "California courts . . . apply the principles set forth in Restatement Section 187, which reflects a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 464–65 (1992). The court assesses "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Id.* at 466. If there is a substantial relationship to the state or another reasonable basis for the choice, the court enforces the choice-of-law provision unless (1) "the chosen state's law is contrary to a *fundamental* policy of California" and (2) "California has a "materially greater interest than the chosen state in the determination of the particular issue." *Id.*

Here, the Court notes that South Dakota has no substantial relationship to the Plaintiffs or the transaction at issue, as the Plaintiffs were residents of California, Washington, Arizona, and Florida at the time they allegedly assented to the terms of the OAA. *See generally* FAC. Nor is there a reasonable basis to apply South Dakota law, as Wells Fargo concedes that South Dakota and California law are identical with respect to the elements of a valid contract. Sioris MTC at 16. As to Plaintiffs Harstock, Winiarski, and Vincent, the Court notes that the elements of contract formation under Washington, Arizona, and Florida law are materially the same as the applicable standard in California. ("Hartsock Opp'n") (Dkt. 63) at 7; Winiarski Opp'n to MTC ("Winiarski Opp'n") (Dkt. 64) at 8; Vincent Opp'n to MTC ("Vincent Opp'n") (Dkt. 65) at 7. Therefore, the court will not enforce the choice of law provision and will apply ordinary principles of California law to determine whether a valid agreement to arbitrate has been formed.

**ii.  Mutual Assent**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-00763-DOC-ADS                                    Date: July 13, 2023

Page 10

     Plaintiffs contend that Wells Fargo fails to show mutual assent to enter into an arbitration agreement. Stock Opp'n at 8–9; Sioris Opp'n at 8–9; Hartsock Opp'n to MTC ("Hartsock Opp'n") (Dkt. 63) at 7–9; Winiarski Opp'n at 8–9; Dkt 65 at 8–10. Plaintiffs first argue that Wells Fargo has not established whether the terms of the 2016 OAA or the 2021 OAA should apply to this dispute. Stock Opp'n at 8; Sioris Opp'n at 8. Additionally, Plaintiffs assert that Wells Fargo has not established that Plaintiffs knowingly consented to either version of the OAA, because there is no evidence that Plaintiffs were given notice that they were consenting to be bound by an arbitration clause or even read the terms of the agreement. Stock Opp'n at 9; Sioris Opp'n at 9; Hartsock Opp'n at 8; Winiarski Opp'n at 8; Vincent Opp'n at 9.

     The issue of contractual assent is within the court's purview of determining whether a valid agreement to arbitrate exists. *See Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) (affirming an order denying arbitration because no evidence was presented that the plaintiff had actual or constructive notice of the agreement). "Courts may only compel arbitration where there are no genuine disputes of material fact surrounding the arbitration agreement's existence." *Hill v. Quicken Loans Inc.*, No. 19-cv-163, 2020 WL 5358394, at *5 (C.D. Cal. Aug. 5, 2020). In evaluating a motion to compel arbitration, "courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Hill*, 2020 WL 5358394, at *4 (quoting *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1249 (C.D. Cal. 2016)).

     Here, the evidence establishes no genuine dispute of material fact as to whether Plaintiffs assented to the terms of the OAA's arbitration provision. First, Plaintiffs do not deny or dispute that they were required to affirmatively accept that terms of the OAA to activate and access their online banking accounts. Hartsock Reply in support of MTC ("Hartsock Reply") (Dkt. 69) at 3; Sioris Reply in support of MTC ("Sioris Reply") (Dkt. 70) at 4; Vincent Reply in support of MTC ("Vincent Reply") (Dkt. 71) at 4; Stock Reply in support of MTC ("Stock Reply") (Dkt. 72) at 4; Winiarski Reply in support of MTC ("Winiarski Reply") (Dkt. 73) at 3.

     Second, the first page of the OAA states, in bold, that it contains an arbitration provision. Hartsock MTC, Morris Decl. Ex. 6 at 18. ("This Agreement includes . . . your agreement with us to use binding arbitration for most disputes arising under this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-00763-DOC-ADS                                  Date: July 13, 2023

Page 11

Agreement[.]"). This refutes Plaintiffs' assertion that the arbitration language was placed in a way that could potentially obscure it.

Third, there are no material differences between the terms of the 2016 and 2021 OAAs. Stock Reply at 3. Plaintiffs even acknowledge that the 2016 and 2021 OAAs are "nearly identical with regard to the arbitration language." Stock Opp'n at 1; Sioris Opp'n at 1; Hartsock Opp'n at 4–5. Accordingly, Plaintiff's argument that Wells Fargo does not commit to which version of the arbitration agreement applies is without merit.

Finally, under California law, "[a] party who is bound by a contract is bound by all its terms, whether or not the party was aware of them." *Norcia v. Samsung Telecomms Am.*, LLC, 845 F.3d 1279, 1284 (9th Cir. 2017). Thus, whether or not Plaintiffs had knowledge of the OAA's arbitration provision is not relevant to the question of whether they agreed to it. Once Plaintiffs assented to the OAA by accessing their mobile banking accounts, they became bound to every provision therein—including the arbitration provision—whether or not they read them. *Maynaz v. Walmart, Inc.*, 479 F. Supp. 3d 890 (C.D. Cal. 2020).

Accordingly, there is no genuine dispute of material fact as to whether the parties entered into an agreement to arbitrate.

**B.  Scope of Arbitration Agreement**

Plaintiffs also argue that the unauthorized Zelle transactions are outside the scope of the OAA's arbitration provision because the provision contains no explicit language addressing a refusal to reimburse fraudulent transactions conducted through Zelle. Stock Opp'n at 9–10; Sioris Opp'n at 9–10; Hartsock Opp'n at 6; Winiarski Opp'n at 6; Vincent Opp'n at 13. Wells Fargo responds that the provision covers disputes over products and services—like Zelle—that can be accessed through Wells Fargo's website or mobile banking. Hartsock Reply at 5; Sioris Reply at 6; Vincent Reply at 5; Stock Reply at 6; Winiarski Reply at 5.

While the general rule is that a district court decides whether a particular claim falls within the scope of an arbitration agreement, arbitrability "can be expressly delegated to the arbitrator where the [contracting] parties clearly and unmistakably provide otherwise." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). *See also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 22-00763-DOC-ADS                    Date: July 13, 2023

                                                              Page 12

("[W]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract, even if the court thinks that the arbitrability claim is wholly groundless.").

Here, the plain language of the OAA's "Dispute Resolution Program" delegates to the arbitrator the authority to interpret the agreement and decide whether a disagreement between the parties is a "dispute" subject to binding arbitration. In turn, the OAA clearly and unmistakably delegates questions of arbitrability to the arbitrator.

In accordance with Supreme Court precedent, the court is required to enforce the OAA according to its terms and, in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability, let an arbitrator determine arbitrability regarding the disputed Zelle transactions. *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

Plaintiffs assert a generally applicable contract defense here by contending that the OAA impermissibly denies them the right to seek out public injunctive relief—both in arbitration and through litigation. Stock Opp'n at 13; Sioris Opp'n at 13; Hartsock Opp'n at 12; Winiarski Opp'n at 4; Vincent Opp'n at 16. Under *McGill*, a provision in any contract that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL is invalid and unenforceable under California law. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 962 (2017). The court emphasized that, "[t]he FAA does not require enforcement of such a provision, in derogation of this generally applicable contract defense, merely because the provision has been inserted into an arbitration agreement." *Id*. Under the FAA, if a party challenges the validity of the precise agreement to arbitrate at issue, a federal court must consider the challenge before ordering compliance with that agreement. 9 U.S.C.A. §§ 2, 4; *Rent-A-Ctr., W., Inc.*, 561 U.S. at 72.

Accordingly, the Court cannot enforce the terms of the delegation clause until it resolves the question of whether the OAA is, as Plaintiffs claim, invalid under *McGill*.

## C. Public Injunctive Relief

In *McGill*, the plaintiff had opened a credit card account with Citibank and purchased from it a credit protector plan under which Citibank agreed to defer or credit certain amounts on her credit card account when certain qualifying events took place

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 22-00763-DOC-ADS                                    Date: July 13, 2023

Page 13

(e.g., long-term disability, unemployment). *McGill*, 2 Cal. 5th at 952. The plaintiff submitted a claim to Citibank under the plan after she lost her job. *Id*. She later filed suit against Citibank based on its marketing of the plan and its handling of her claim. *Id*. For relief, she requested, among other things, an injunction prohibiting Citibank from continuing to engage in its allegedly illegal and deceptive practices. *Id*. at 953.

The California Supreme Court explained that "public injunctive relief" is "relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten injury to the general public," whereas private injunctive relief is "[r]elief that primarily 'resolve[s] a private dispute' between the parties . . . and rectifies individual wrongs . . . and that benefits the public, if at all, only incidentally." *Id.* at 955. "[T]o qualify as public injunctive relief" under *McGill*, "an injunction must be for the benefit of the general public as a whole, as opposed to a particular class of persons." *Cottrell v. AT&T Inc.*, 2021 WL 4963426, at *1 (9th Cir. Oct. 26, 2021).

Plaintiffs Stock and Sioris argue the OAA arbitration provision if enforced here would act as an impermissible waiver on their right to obtain injunctive relief under California's UCL to protect the general public. Stock Opp'n at 14; Sioris Opp'n at 14. Stock and Sioris explain that the FAC seeks public injunctive relief by requesting "prospective relief in the interests of the general public" to cease Wells Fargo's practice of denying transaction disputes and refunds. Stock Opp'n at 16–17; Sioris Opp'n at 16–17. Wells Fargo responds that *McGill* does not apply here, as Plaintiffs primarily seek monetary relief that would benefit themselves and other Wells Fargo accountholders, not the public generally. Hartsock Reply at 10; Sioris Reply at 10.

Under *McGill*, the OAA clearly precludes Plaintiffs from seeking out public injunctive relief in all fora by (1) requiring individual arbitration of all disputes, (2) waiving the right to a trial before a judge in a public court, and (3) prohibiting any claimant from acting in any arbitration "in the interest of the general public or in a private attorney general capacity." (OAA, Exhibit 9, Dkt. 57-2 at 136). However, the inquiry does not end here. In order to invoke *McGill*, a plaintiff must actually allege a claim for public injunctive relief. *See Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541 (9th Cir. 2021) (holding that a court need not look to whether a contract might bar "hypothetical" relief that a plaintiff does not in fact seek to determine whether an arbitration provision is enforceable under *McGill*).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SA CV 22-00763-DOC-ADS                                Date: July 13, 2023

Page 14

Plaintiffs here primarily seek injunctive and monetary relief on behalf of a group limited to Wells Fargo accountholders who did not receive reimbursements for losses from fraudulent transactions involving the Zelle mobile application. *See e.g.*, FAC ¶¶ 41, 42, 141, 142 186, 200. This is a request for relief on behalf of a specific and narrow class of consumers, not the public at large, as is required for *McGill* to apply. *See Hodges* 21 F.4th at 549 (indicating that relief sought on behalf of Comcast cable subscribers would only benefit a group of individuals similarly situated to plaintiff as opposed to the general public); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 870–71 (9th Cir. 2021) ("Plaintiffs' requested injunctive relief cannot be remotely characterized as 'public injunctive relief,' since "the relief sought by Plaintiffs—to 'enjoin Uber from misclassifying its drivers as independent contractors, thus entitling them to the protections of Massachusetts wage laws, including paid sick leave'—is overwhelmingly directed at Plaintiffs and other rideshare drivers.").

While Plaintiffs here seek "an order prohibiting Defendants from engaging in unlawful and/or unfair acts . . . including public injunctive relief," *see* FAC at 46, Plaintiffs only specify the injunctive relief sought on behalf of themselves and a subset of Wells Fargo accountholders. *See e.g.*, FAC ¶ 150.  Such a request—without more—is insufficient to establish that Plaintiffs are requesting public injunctive relief.[5] *See Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042, at *6 (C.D. Cal. Sept. 18, 2018) ("Merely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for public injunctive relief."); *Hodges* 21 F.4th at 549 ("[F]orward-looking prohibitions against future violations of the law . . . alone [are] not enough to classify a remedy as public injunctive relief within the meaning of the *McGill* rule."). Therefore, the OAA's arbitration provision remains valid and enforceable as to Plaintiffs Stock and Sioris, as the FAC do not actually allege a claim for public injunctive relief.

Plaintiffs Harstock, Winiarski, and Vincent raise similar objections under the laws of Washington, Arizona, and Florida, respectively, by contending that the arbitration provision's waiver on the right to seek out a public injunction renders the OAA substantively unconscionable under *McGill*. Hartsock Opp'n at 12–14; Winiarski Opp'n at 13–16; Vincent Opp'n at 16–19. However, Plaintiffs offer no legal authority applying

---

[5] By contrast, in another case before this Court, plaintiffs who brought similar claims against Zelle and member banks specifically sought an injunction on behalf of the general public to prevent Zelle and its member banks from misrepresenting the Zelle service. *See* Amended Complaint, ECF No. 17, *Dele Hope v. Early Warning Services*, No. 2:22-cv-04639-DOC-ADS (C.D. Cal. filed, Oct. 3, 2022) ¶¶ 13, 143.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 22-00763-DOC-ADS                                    Date: July 13, 2023

Page 15

*McGill* to consumer protection laws other than California's. Regardless, the Court need not address that issue here, as the FAC does not make a claim for public injunctive relief. Therefore, the OAA's arbitration provision remains valid and enforceable with respect to Plaintiffs Harstock, Winiarski, and Vincent.

      Accordingly, the Court GRANTS Defendants' Motions to Compel Arbitration.

**Disposition**

      For the reasons explained above, the Court **GRANTS** Wells Fargo's Motions to Compel Arbitration (Dkts. 54–58) and **STAYS** this action pending the completion of arbitration. The parties are **ORDERED** to submit a joint status report within 90 days regarding the status of arbitration proceedings.

      The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                    Initials of Deputy Clerk:
                                                                                          kdu

CIVIL-GEN